AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF<br>AMERICA FOR AN ORDER AUTHORIZING THE MONITORING OF<br>GLOBAL POSITIONING SYSTEM INFORMATION AND CELL SITE<br>DATA FOR AT&T CELL PHONE WITH TELEPHONE NUMBER<br>323-200-7137, IMSI NUBMER 310410925249528 AND IMEI<br>3548330926988215 | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 19-sc-747 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A incorporated herein.

located in the _____ District of _____ Columbia _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) | PWID Narcotics |
| 21 U.S.C. §§ 846 | Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.

☑ Delayed notice of _120_ days *(give exact ending date if more than 30 days:* **08/03/2019** *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Josh Miller
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ **telephone** _____ *(specify reliable electronic means).*

Date: 04/05/2019 _____

_____
*Judge's signature*

City and state: Washington, D.C. _____

Magistrate Judge Deborah A. Robinson
*Printed name and title*

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF | ) |
| AMERICA FOR AN ORDER AUTHORIZING THE MONITORING OF | ) |
| GLOBAL POSITIONING SYSTEM INFORMATION AND CELL SITE | ) |
| DATA FOR AT&T CELL PHONE WITH TELEPHONE NUMBER | ) |
| 323-200-7137, IMSI NUBMER 310410925249528 AND IMEI | ) |
| 3548330926988215 | |

Case No.  19-sc-747

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Columbia _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ April 19, 2019 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Magistrate Deborah A. Robinson _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☑ until, the facts justifying, the later specific date of _____ 08/03/2019 _____ .

Date and time issued:    _____ 04/05/2019 _____

_____
*Judge's signature*

City and state:   Washington, D.C. _____

Magistrate Judge Deborah A. Robinson
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br> 19-sc-747 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1.  The cellular telephone assigned call number 323-200-7137, (the "TARGET DEVICE"), whose wireless service provider is AT&T, a company headquartered at 11760 US Highway 1, Suite 600 North Palm Beach, FL 33408.

2.  Information about the location of the Target device that is within the possession, custody, or control of AT&T.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target device described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government. In addition, AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services, including by initiating a signal to determine the location of the Target device on AT&T network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

19

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ) | |
| UNITED STATES OF AMERICA FOR AN ORDER ) | **Case No.: 19-sc-747** |
| AUTHORIZING THE MONITORING OF GLOBAL ) | |
| POSITIONING SYSTEM INFORMATION AND ) | **(Under Seal)** |
| CELL SITE DATA FOR AT&T CELL ) | |
| PHONE WITH TELEPHONE NUMBER ) | |
| 323-200-7137,IMSI NUBMER 310410925249528 ) | |
| AND IMEI 3548330926988215 ) | |

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
### FOR CELL SITE AND GLOBAL POSITIONING SYSTEM INFORMATION

I, Joshua M. Miller, Special Agent, Federal Bureau of Investigation ("FBI"), Washington

Field Office ("WFO"), Washington, D.C., (herein "affiant") being duly sworn, depose and state

the following:

### INTRODUCTION

1.     I make this affidavit in support of an application for a renewal of a search warrant

under Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c)(1)(A), and former Chief Judge

Hogan's Memorandum Opinion In the Matter of the Application of the United States of America

for and Order Authorizing the Monitoring of Geolocation and Cell Site Data for a Sprint Spectrum

Cell Phone, 2006 WL 6217584 at *4 (D.D.C. 2006) (Hogan, C.J.) ("Hogan Opinion"), for

information about the prospective location of the cellular telephone assigned call number 323-200-

7137, IMSI 310410925249528 and IMEI 3548330926988215 (hereinafter referred to as "the

TARGET DEVICE") with service provided by AT&T, a wireless telephone service provider

1

headquartered at 11760 US Highway 1, Suite 600 North Palm Beach, FL 33408.[1] The TARGET DEVICE is subscribed to Erika Espinoza Fonseca ("FONSECA"), 9402 Holmes Avenue Los Angeles, CA 90002. The TARGET DEVICE is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B. This Court has authority to issue the requested warrant in this matter because it is a court of competent jurisdiction in that it is a "district court of the United States (including a magistrate judge of such court) . . . that-(i) has jurisdiction over the offense being investigated." 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A)(i). This affidavit request that the court issue an order that will continue if the TARGET DEVICE number is changed but IMEI and IMSI numbers attached to the TARGET DEVICE remain the same because as described *infra,* narcotics traffickers routinely change their phone numbers in an attempt to avoid detection by law enforcement.

2.      I am a Special Agent with the FBI and therefore, I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.      I have been a Special Agent ("SA") with the FBI since March 2017. I am currently in the FBI's WFO on a squad which is responsible for conducting investigations that target large drug trafficking organizations. From July 2017 to the present, I have been working on federal narcotics investigations and I have participated in several investigations that led to the arrest and conviction of multi-kilogram narcotics distributors. I have authored search warrants and GPS vehicle and phone tracking warrants. I have received training and experience in interviewing and

---

[1]      The application is not seeking authorization to search the cellular telephone hardware, as the hardware is not in the government's possession. The application only seeks authorization to acquire information about the location of the TARGET DEVICE.

interrogation techniques, arrest procedures, search and seizure, narcotics, white-collar crimes, search warrant procedures, and the investigation of various other crimes. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of drug proceeds, and the organization of drug conspiracies. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; supporting undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; and preparing and executing search warrants that have led to substantial seizures of narcotics, firearms, and other contraband.

4.      In my experience as a Special Agent with the FBI, I have come to know that drug traffickers often communicate with one another on cellular telephones. In my experience, drug traffickers communicate through text message or oral conversations when arranging drug sales. While more sophisticated drug traffickers do not speak overtly over their cellular telephone regarding drug sales, they still routinely carry their cellular telephone on their person to the location of drug sales. Accordingly, the location data for cellular telephones yield very useful evidence when law enforcement is attempting to establish a pattern of travel during drug sales. In my experience, this pattern of travel can assist law enforcement in determining where the drug trafficker visits before the drug sale, and where the drug trafficker travels after the sale. This in turn, in my experience, can greatly assist law enforcement in identifying locations where drugs are being stored or packaged as well as locations where the proceeds of drug sales are being stored, deposited, or laundered.

5.      This affidavit is based, in part, upon my own knowledge of the investigation, information provided to me by other agents of the FBI, controlled narcotic purchases, physical

surveillance, and other information gathered during the course of this investigation. Because this affidavit is being submitted for the limited purpose of securing an order directing a telecommunications service provider to give law enforcement cell site and Global Positioning System ("GPS") information, I have not included every fact known to me concerning this investigation. I have set forth only the facts, which I believe are necessary to establish probable cause for the issuance of an order directing the service provider to supply cell site and GPS information.

6.     As a result of my personal participation in this investigation, as well as through interviews with, and analysis of, reports submitted by other agents of the FBI, I am familiar with all aspects of this investigation. Based on the facts set forth in this affidavit, there is probable cause to believe that ERIKA FONSECA ("FONSECA") is currently trafficking narcotics between Los Angeles, California and the Washington, D.C., metropolitan area in violation of 21 U.S.C. §§ 841(a)(1) and 846. There is also probable cause to believe that the location information described in Attachment B will lead to the identification of individuals who are also engaged in the illegal sale and purchase of narcotics with FONSECA, as well as locations where FONSECA may be storing and packaging controlled substances.

## COOPERATING WITNESS

7.     Cooperating Witness 1 ("CW-1") has been providing both historical and up-to-date information to the FBI for approximately four months. CW-1 has pleaded guilty to one count of Conspiracy to Distribute and Possess with the Intent to Distribute 50 or more grams of actual methamphetamine and 500 grams or more of cocaine, in violation of 21 U.S.C. § § 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B). The plea agreement provides that CW-1 may receive a sentencing reduction if CW-1 is deemed to have provided substantial assistance to law enforcement. CW-1

4

has prior misdemeanor and felony convictions for possession of a firearm and possession of controlled substances with intent to distribute. During the course of CW-1's cooperation, CW-1 has provided information in reference to several narcotics traffickers operating in the St. Paul, MN, Newark, NJ, and Los Angeles, CA, areas. CW-1 has also participated in several undercover operations where CW-1 has provided law enforcement funds to a known narcotics distributor in Los Angeles, CA in exchange for narcotics. To your affiant's knowledge, CW-1 has never provided information to law enforcement that has proven to be false or misleading.

8.     Cooperating Witness 2 ("CW-2") has been cooperating with the FBI for approximately fifteen months. CW-2 has pleaded guilty to a felony narcotics violation in the United States District Court for the District of Columbia and entered into a cooperation agreement with the United States, which provides for the possibility that CW-2 could receive a more lenient sentence if CW-2 is deemed to have provided substantial assistance to law enforcement. CW-2 has prior felony convictions for felon in possession of a firearm and possession of cocaine. During the course of CW-2's cooperation, CW-2 has provided information in reference to several narcotics traffickers operating in the Washington, D.C., and Los Angeles, CA, areas. CW-2 has participated in several controlled narcotics purchases at the direction of law enforcement officers. To your affiant's knowledge, CW-2 has never provided information to law enforcement that has proven to be false or misleading.

## CASE BACKGROUND

9.     In July 2017, Special Agents with the FBI, through a separate confidential source, began purchasing wholesale quantities of methamphetamine from CW-2 in the District of Columbia. At that time, CW-2 was a target of this investigation. During the course of the investigation, members of law enforcement identified a United Parcel Service (hereinafter referred

to as "UPS") store in Washington, D.C. which CW-2 used to have narcotics shipped from the Los Angeles, CA area. Specifically, on November 27, 2017 in the District of Columbia, law enforcement intercepted a UPS parcel package that was intended to be delivered to CW-2. The originating address on the parcel was listed as Carson, California, and the shipping address was to a post office box linked to CW-2 at a UPS store located at 2202 18th Street, N.W., Washington, D.C. The parcel package was seized by law enforcement, and subjected to a narcotics scan by Detective Jeffrey Ward, Montgomery County Police Department, and his canine partner "Kayden." The result of the scan by Kayden produced a positive response on the parcel package for the presence of a controlled, dangerous substance.

10.     Following the positive canine response, a search warrant, Case No. 1:17-mj-914, was issued by United States Magistrate Judge G. Michael Harvey, United States District Court for the District of Columbia, which authorized law enforcement to search the parcel package. The search of the parcel package resulted in the recovery of a "Mickey Mouse" lunchbox containing three vacuum-sealed bags that each contained a crystal-like substance. The combined weight of all three vacuum-sealed packages was approximately three pounds. A portion of the crystal-like substance was subjected to a preliminary field test and indicated a positive color reaction for methamphetamine. The following day, members of law enforcement conducted a controlled delivery of the parcel that resulted in the arrest of CW-2.

11.     During the post arrest interview, CW-2 waived *Miranda* rights, and provided law enforcement with information in reference to several of CW-2's California based narcotics suppliers. Specifically, CW-2 confirmed that the suspected methamphetamine was shipped to him by an individual previously identified by members of law enforcement as CW-1.

6

12.     Members of law enforcement approached CW-1 on December 10, 2018 regarding previous narcotics transactions where CW-1 supplied CW-2 with methamphetamine and cocaine as part of several undercover operations conducted by law enforcement. CW-1 agreed to speak with law enforcement on December 10, 2018. CW-1 provided law enforcement with information regarding several wholesale narcotics suppliers. Specifically, CW-1 identified several Los Angeles, CA based narcotics suppliers that are currently shipping narcotics throughout the United States including to the Washington, D.C. area. CW-1 confirmed that one of those suppliers is FONSECA, the user of the TARGET DEVICE. CW-1 confirmed that in July 2018, CW-1 brokered a three pound methamphetamine purchase/sale between FONSECA and CW-2 with the methamphetamine being supplied by FONSECA. CW-2 was cooperating with law enforcement during this transaction and this sale resulted in the law enforcement seizure of approximately three pounds of methamphetamine which was shipped from California to CW-2 in Washington, D.C. The methamphetamine shipment was seized by law enforcement in Washington, D.C. on or about August 15, 2018. CW-1 has confirmed that CW-1 obtained that methamphetamine from FONSECA before shipping it to CW-2 in Washington, D.C.

13.     CW-1 informed law enforcement that as a result of a seizure that occurred in August 2018, CW-1 still owed FONSECA $6,800 for the three pounds of methamphetamine. CW-1 had initially received five pounds of methamphetamine from FONSECA in late July 2018 or early August 2018. CW-1 informed law enforcement that CW-1 sold CW-2 three of the five pounds of methamphetamine in the August 15, 2018 transaction. CW-1 informed law enforcement that one pound of methamphetamine was sold separately and CW-1 returned the last pound of methamphetamine to FONSECA. CW-1 explained that CW-1 had not yet paid FONSECA for any of the methamphetamine that she "fronted" him. CW-1 therefore owed FONSECA $6,800.

14.     On December 28, 2018, FONSECA sent a text message to CW-1 from the TARGET DEVICE using an application based phone number 805-457-5253 a phone number associated with the TARGET DEVICE,[2] "Hello." CW-1 replied, "Who is this?" FONSECA answered, "Your neighbor I change the number," to which CW-1 replied, "Ok." FONSECA then asked, "Any news?" CW-1 replied, "Looks like it's going to be after new years but it's for sure." Based on my training and experience, I believe that FONSECA was asking CW-1 about the status of the outstanding debt.[3]

15.     On January 9, 2019, CW-1 received two text messages from FONSECA using the same application based telephone number 805-457-5253 that stated, "Good morning" and "How you been i need to hear from you and the tittles." I believe that FONSECA was again asking CW-1 about the outstanding debt and CW-1 has since confirmed that FONSECA was asking him about his outstanding debt. Based on my training and experience, narcotics traffickers often use code words in an attempt to conceal their nefarious dealings from law enforcement. FONSECA's reference to "tittles" misspelled, but meant as "titles," is in reference to the $6,800 debt CW-1 owed to FONSECA.

16.     On January 10, 2019 FONSECA again sent a text message to CW-1 stating, "The auction wants to talk to you about the papers from the cars." Based on my training and experience,

---

2 Phone number 805-457-5253 and 323-813-7182 are serviced by Bandwidth.com. Both numbers are cellular phone application ("app") based. Bandwidth.com is a subsidiary of Bandwidth Inc. Bandwidth Inc. ("Bandwidth") is a nationwide communications and Voice over Internet Protocol (VoIP) service provider. Many Bandwidth customers use Bandwidth VoIP services in a wholesale manner, offering services of their own together with a Bandwidth telephone number to their end users. In these cases, Bandwidth does not have a relationship to the end user or any information about the end user and how the number is being used by the end user. In fact, Bandwidth may not provide any of the features of the end-user's services even though they may include a Bandwidth telephone number.
3 All actions taken by CW-1 after December 10, 2018 were done at the direction and under the supervision of law enforcement.

I believe that FONSECA was informing CW-1 that her supplier wished to speak to CW-1 about the $6,800 debt. CW-1 has confirmed that this belief is accurate.

17. On January 23, 2019 CW-1 sent FONSECA a text message to the application based phone number 805-457-5253 that read, "He's going to send some of the money down and them he's going to come down with the rest. It should be Monday. I told him everything ur telling me." CW-1 did not receive a response from FONSECA. On January 25, 2019 CW-1 again sent a text message to FONSECA at 805-457-5253, "How much was each one of them cars." CW-1 did not receive a response. In this instance CW-1 is using the code word "cars" in reference to the debt.

18. On January 30, 2019 CW-1 informed law enforcement that FONSECA had provided a new application based telephone number to CW-1, 323-813-7182.[4] On January 30, 2019, CW-1 again sent a text message to FONSECA's application based telephone number 323-813-7182, "Good morning . . . This is ur neighbor. I been texting the number u gave with no response . . . I need to know the total cost on the cars." FONSECA replied from the above number, "17," to which CW-1 answered, "Ok." I believe that 17 is a reference to $1700, which is the cost for each pound of methamphetamine FONSECA provided to CW-1. CW-1 has since confirmed that this is a correct interpretation.

19. On February 4, 2019, law enforcement conducted an operation with CW-1 to pay FONSECA the $6,800 debt. At approximately 2:45 p.m.[5] surveillance was initiated at "A & F Registration" located at 8420 Compton Avenue, Los Angeles, CA 90001, a car titling business

---

4 Utilizing application based phone numbers allows narcotics traffickers to easily change their telephone numbers. In my training and experience narcotics traffickers often switch phone numbers on a regular basis in an attempt to avoid detection by law enforcement. Law enforcement data base checks indicate that from December 23 to present, FONSECA utilized a subsidiary service provider of Bandwidth.com called "TextNow" which is a cellular telephone application that allows users to easily change phone numbers.

5 All times given during the February 4, 2019 operation are Pacific Standard Time.

associated with FONSECA.[6] FBI Special Agents Matt Zito and Carolina Nolte met with CW-1 and provided CW-1 with $6,800 in Official Government Funds (OGF). CW-1 was given audio/video recording equipment and was instructed to deliver the funds to FONSECA. CW-1 was also provided a transmitter to allow law enforcement to monitor the interaction. At approximately 3:11 p.m., CW-1 was observed by law enforcement arriving at A & F Registration. CW-1 parked and entered the front door (main entrance) of the business. At approximately 3:15 p.m., CW-1 was observed by law enforcement exiting A & F Registration. CW-1 returned to her/his vehicle, accessed the vehicle and then re-entered A & F Registration. At approximately 3:21 p.m. FONSECA's known vehicle, a black Mercedes Benz bearing California license plate number 7LON887 was observed arriving at A & F Registration. A Hispanic female matching FONSECA's description exited the vehicle and entered the business through the main entrance. At approximately 3:23 p.m., CW-1 exited the business, entered his/her vehicle and departed the area. CW-1 was surveilled back to the staging location where Special Agents Zito and Nolte retrieved the recording equipment and the transmitter. CW-1 was de-briefed and noted that the debt owed to FONSECA was settled and that FONSECA offered to continue to sell narcotics to CW-1. During the meeting, FONSECA offered to provide CW-1 with two pounds of methamphetamine on consignment and intimated that she had the methamphetamine close at hand.

20.     CW-1 was searched both before and after the meeting with FONSECA and was found to be free of money and contraband.

21.     At approximately 3:25 p.m. FONSECA was observed exiting A & F Registration. She entered her vehicle and departed through the alley next to the business. At approximately 3:30

---

6 In addition to law enforcement data base check associating A & F Registration to FONSECA, a Google Map search of 8420 Compton Avenue, Los Angeles, CA 90001 shows that on the side of the building is an advertisement for the business with the email address "erikafonseca80@att.net.

p.m., FONSECA was observed in the vicinity of 2029 E. Florence Avenue Los Angeles, CA 90001. She parked her car and entered the Nails Club and Spa. FONSECA was observed inside the Nails Club and Spa by law enforcement at approximately 4:15 p.m. At approximately 4:22 p.m. FONSECA was observed exiting the Nails Club and Spa speaking on the TARGET DEVICE. At approximately 4:25 p.m. FONSECA's vehicle was lost in traffic. Law enforcement checked several addresses for FONSECA but were unable to locate her. At approximately 4:51 p.m. surveillance was terminated. Toll records indicate that FONSECA used the AT&T cellular telephone number assigned to the TARGET DEVICE approximately 11 times during the operation. She received 5 incoming calls and made six outgoing calls.

## **PROBABLE CAUSE FOR RENEWAL**

22.     On March 4, 2019 United States Magistrate Judge Deborah A. Robinson, United States District Court for the District of Columbia authorized search warrant case no. 19-sc-425 for the monitoring of GPS information and cell site data for the TARGET DEVICE. Your affiant requests that the March 4, 2019 affidavit be incorporated herein.

23.     On March 13, 2019 law enforcement conducted an undercover operation with CW-1, FONSECA and an individual identified as FONSECA's methamphetamine supplier, JAIME VARGAS, which resulted in the seizure of three pounds of methamphetamine supplied to CW-1 through FONSECA by VARGAS.

24.     Prior to the operation, law enforcement met CW-1 at a pre-determined location and provided CW-1 with recording equipment and $5,100 in Official Government Funds ("OGF"). CW-1 was searched and found to be free of all money and contraband, aside from the funds provided by law enforcement. CW-1 was instructed to meet FONSECA at her place of business, "A&F Registration," a vehicle titling and registration business, located at 8420 Compton Avenue,

11

Los Angeles, CA, and exchange the $5,100 in OGF for approximately three pounds of methamphetamine.

25.     At approximately 10:28 a.m. law enforcement conducting surveillance observed VARGAS's known vehicle parked in an alley alongside "A&F Registration" at 8420 Compton Avenue, Los Angeles, CA. A Hispanic male, later identified as VARGAS, exited the front passenger door of VARGAS's vehicle, and walked toward the front of A&F Registration. VARGAS was carrying a black, laptop-style bag. VARGAS entered A&F Registration.

26.     At approximately 10:30 a.m. VARGAS exited A&F Registration with nothing in his hands, apparently leaving the black laptop bag in the building, and he entered the front passenger side of his vehicle. The vehicle then departed the area, driving east down the alley and out of sight.

27.     At approximately 10:38 a.m., law enforcement observed FONSECA park her known vehicle in the alley just north of A&F Registration. She left her vehicle with a brown purse and entered A&F Registration.

28.     At approximately 11:07 a.m., CW-1 arrived at A&F Registration, exited the CW vehicle, and entered A&F Registration. CW-1 had nothing in his hands at the time. Three minutes later, CW-1 exited A&F Registration carrying a brown box. CW-1 placed the box in the rear passenger door of the CW vehicle and departed the area. CW-1 drove to a pre-arranged meeting location and met with law enforcement. Law enforcement took custody of the box CW-1 was observed placing in the back seat of the vehicle, and recovered approximately three pounds of suspected methamphetamine. The suspected methamphetamine was later subjected to a field test and showed a positive color reaction for methamphetamine. CW-1 was debriefed and the recording

equipment was collected. CW-1 confirmed that FONSECA sold CW-1 the methamphetamine. CW-1 was searched and found to be free of contraband and money.

29.     At approximately 11:28 a.m. FONSECA was observed exiting A&F Registration. She was carrying her purse and a black laptop bag that appeared to be the same bag previously carried into A&F Registration by VARGAS and left in the building before the methamphetamine sale. FONSECA entered her known vehicle and departed the area. FONSECA was surveilled by law enforcement and followed to a McDonald's parking lot, located at 8681 South Alameda Street, Los Angeles, CA. Parked in the same McDonald's parking lot was VARGAS in his known vehicle previously observed at A&F Registration.

30.     At approximately 11:35 a.m. VARGAS exited the passenger side of his vehicle and approached the driver's side door of FONSECA's vehicle. Law enforcement observed VARGAS retrieve the black laptop bag from FONSECA. VARGAS then returned to his vehicle and entered the passenger side with the black laptop bag. VARGAS then departed the area under surveillance by law enforcement.

31.     Toll analysis of March 13, 2019 confirmed that FONSECA utilized the TARGET DEVICE eight times throughout the operation.

32.     On March 20, 2019 law enforcement confirmed through subpoena to the TARGET DEVICE service provider AT&T, that FONSECA obtained a new application based number on the TARGET DEVICE. The new number is 626-501-9766. Subpoena records obtained from AT&T indicate FONSECA has been in possession of the TARGET DEVICE since 2012, however she has used application based telephone numbers through TextNow to change her number 13 times since November 2017.

33.     Based upon the telephone conversations described *supra*, the telephone analysis and subpoenas of the TARGET DEVICE, and the recorded conversation provided by the recording equipment in CW-1's possession on February 4, 2019, and March 13, 2019, along with law enforcement and toll analysis, I believe that FONSECA is still in possession of the TARGET DEVICE and traveling with/ using the TARGET DEVICE before, during, and after she engages in narcotics trafficking activity. I submit that based upon the aforementioned facts, there is probable cause to believe that ERIKA FONSECA is utilizing the TARGET DEVICE to distribute and possess with intent controlled substances, as well as conspiring to do so, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and that tracking the location of the TARGET DEVICE will yield valuable evidence in this investigation.

## INVESTIGATIVE PURPOSE

34.     ERIKA FONSECA has been identified as a wholesale narcotics trafficker that is supplying narcotics being shipped to Washington, D.C., as well as other areas across the United States. I believe that FONSECA is currently in possession of the TARGET DEVICE, and is using the TARGET DEVICE to arrange narcotics transactions with her customers and travel with the TARGET DEVICE to narcotics transactions. The location data for the TARGET DEVICE will assist agents in locating possible residences and other locations used by FONSECA, which may be used as stash locations to facilitate drug trafficking activities. Location data for the TARGET device will also provide law enforcement with a pattern of travel during drug transactions which will assist law enforcement in determining where FONSECA is obtaining the drugs and where she may be depositing the proceeds from drug sales. The information will also allow law enforcement to conduct surveillance on FONSECA in an effort to identify other members of her drug trafficking organization, including her drug suppliers.

14

35.     In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

36.     Based on my training and experience, I know that AT&T can collect E-911 Phase II data about the location of the TARGET DEVICE, including by initiating a signal to determine the location of the TARGET DEVICE on AT&T network or with such other reference points as may be reasonably available. Based on my training and experience, I know that AT&T can collect cell-site data about the TARGET DEVICE. The government is seeking both E-911 Phase II data, which also is known as GPS data, as well as cell-site data.

**AUTHORIZATION REQUEST**

37.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

38.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed, or in the event that your affiant applies for an additional period of GPS collection from the TARGET DEVICE, 90 days from the termination of collection from the TARGET DEVICE. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the TARGET DEVICE would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

39.     I further request that the Court direct AT&T to disclose to the government any information that is within the possession, custody, or control of AT&T for a period of 30 days during all times of day and night. I also request that the Court direct AT&T to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the requested location information unobtrusively and with a minimum of interference

with AT&T's services, including by initiating a signal to determine the location of the TARGET DEVICE on AT&T's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

40.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET DEVICE outside of daytime hours.

41.    I further request that the Court order that all papers in support of this application including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
JOSHUA M. MILLER, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this _____ day of April 2019.


_____
Deborah A. Robinson
United States Magistrate Judge
for the District of Columbia